**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Chhuong V.,

Petitioner,

v.

David Easterwood, et al.,

Respondents.

**ORDER GRANTING WRIT OF HABEAS CORPUS**
Civil File No. 26-03264 (MJD/SGE)

---

Byron E Starns, Jr., Timothy Sanders Szabo, Stinson Leonard Street LLP, Counsel for Petitioner.

Worthington Phillips, Assistant United States Attorney, Counsel for Respondents.

---

## I. INTRODUCTION

This matter is before the Court on Petitioner Chhuong V.'s Petitioner for Writ of Habeas Corpus filed July 10, 2026. (Doc. 1.) Petitioner asserts that he is being held in detention in violation of the Immigration and Nationality Act ("INA") and the Chhoeun v. Quinonez Settlement Agreement. Petitioner seeks a writ of habeas corpus requiring, among other things, that Respondents immediately release him from custody into Minnesota.

## II. FACTS

### A. Background

Petitioner came to the United States in 1979 at the age of five years old as a refugee from Cambodia. (Doc. 1 ¶ 1.) Petitioner's family fled Cambodia to escape violence in the country. (Id. ¶ 21.) Petitioner was initially admitted to the United States as a parolee and later became a lawful permanent resident. (Id. ¶ 22.)

Petitioner was ordered removed in 1999 following a series of criminal convictions. (Id. ¶¶ 23, 24.) In 1994, Petitioner was convicted of second-degree assault with a dangerous weapon. (Doc. 5 at 1.) In 1998, Petitioner was convicted of possession of illegal possession of a firearm. (Id. at 2.)

On November 22, 1999, Petitioner was ordered removed by an immigration judge. (Doc. 1 ¶ 24.) Because Cambodia was not accepting repatriation from the United States, Petitioner's removal was not reasonably foreseeable, and he was released on an Order of Supervision on October 18, 2000.[1] (Id. ¶ 25.) As part of his Order of Supervision, Petitioner was required to

[1] Note that there were two Orders of Supervision pertaining to Petitioner provided to the Court. Respondents provided an Order of Supervision dated October 18, 2000. (Doc. 6-4.) Petitioner provided an Order of Supervision dated September 4, 2001. (Doc. 1-1.) It appears that the 2001 Order of Supervision replaced the 2000 one, however, because both Orders of Supervision contain the

report to ICE periodically, not travel outside certain geographical limits without permission, notify ICE of changes of address or employment, assist with obtaining travel documents, and obtain employment authorization prior to becoming employed. (Id. ¶ 26; Doc. 1-1.)

For over 25 years, Petitioner complied with all terms of his Order of Supervision and has appeared at all immigration check-ins. (See Doc. 1-1 at 3–5.) On July 7, 2026, Petitioner attended his routine check-in with ICE in accordance with his Order of Supervision. (Doc. 1 ¶ 31; Doc. 1-1 at 5.) At the end of the check-in, the ICE officer wrote Petitioner's next check-in date as January 8, 2027. (Doc. 1 ¶ 32; Doc. 1-1 at 5.) The ICE officer then went back to the office and several minutes later, two different officers came and directed Petitioner to a separate room, where he was handcuffed and arrested. (Doc. 1 ¶ 33.) Petitioner indicates that he did not receive advance notice that ICE intended to re-detain him. (Id. ¶ 34.)

Respondents state that ICE received a travel document to remove Petitioner to Cambodia on March 9, 2026. (Doc. 5 at 2 (citing Doc. 6 ¶ 15).) Respondents then indicate that when Petitioner arrived for his routine check-in

---

same requirements on Petitioner, the Court does not find the two different documents pertinent to its analysis.

on July 7, 2026, ICE officers determined that Petitioner was removable and issued a "Notice of Revocation of Release." (Id. at 2; Doc. 6 ¶ 11.) Respondents maintain that ICE then issued an updated I-205, Warrant of Removal and conducted an informal interview with Petitioner, both also on July 7, 2026. (Doc. 5 at 2–3; Doc. 6 ¶ 13.) Petitioner remains in custody at the Freeborn County Jail in Albert Lea, Minnesota. (Doc. 1 ¶ 1.)

**B. Chhoeun v. Quinonez Settlement Agreement**

Petitioner and Respondents do not dispute that Petitioner is a member of the Chhoeun v. Quinonez, No. 8:17-CV-1898 (JWH/GJS) (C.D. Cal. Apr. 27, 2026) settlement class. (See Doc. 1 ¶ 27; Doc. 5 at 12.) On April 27, 2026, the Honorable John W. Holcomb of the U.S. District Court for the Central District of California approved a Settlement Agreement of a class action brought by Cambodian citizens who had received final orders of removal but had been released on Orders of Supervision. See Chhoeun, No. 8:17-CV-1898, Doc. 404.

Prior to the Settlement Agreement, the court had issued a permanent injunction that required ICE to provide 14 days' written notice to any class member prior to re-detention. Id. at Doc. 336.

In the Settlement Agreement – provided by Petitioner to the Court directly – the listed purpose noted that it intended to replace the permanent injunction's 14-day notice requirement with a generalized notice requirement:

> The Court instituted a permanent injunction providing certain protections to members of the certified class by requiring a notice of pending removal at least fourteen days before the noncitizen is re-detained for removal. This Agreement is intended to replace the permanent injunction with an immediate notice to members of the Settlement Class . . . that they are subject to removal and can seek to reopen their removal proceedings if their circumstances or the law underlying their removal order has changed, or other grounds for reopening exist. The intent of the Agreement is to provide more timely and effective notice to address Petitioners' claims.

(Doc. 1-2 at 5–6 (internal citations omitted).)

The Settlement Agreement requires that within six months after the Court's approval of the Settlement Agreement, ICE must provide a generalized "informational notice" to all class members 1) to remind the individual that they are subject to a final deportation order and that ICE "may take action to deport" them at some point in the future, and 2) provide information on how the individual can explore whether they have any legal options to "reopen" their immigration proceedings. (Id. at 7–8, 21–22.) The deadline for ICE to provide such notice is October 27, 2026.

**C. Current Habeas Petition**

On July 10, 2026, Petitioner filed this petition for habeas corpus. (Doc. 1) On July 13, 2026, the Court ordered Respondents to respond to Petitioner's petition by July 17, 2026 and to file "[s]uch affidavits and exhibits as are needed to establish the lawfulness and correct duration of Petitioner's detention in light of the issues raised in the habeas petition." (Doc. 3 ¶ 2.)

On July 17, 2026, Respondents filed their response and accompanying exhibits. (See Doc. 5; Doc. 6.) Included in Respondents' submission was an affidavit, a 1999 Notice to Appear, Petitioner's 1999 final removal order, a 1999 Warrant of Removal (I-205), Petitioner's original 2000 Order of Supervision, Petitioner's Notification of Revocation of Release and accompanying certification of an informal interview, Petitioner's Record of Deportable/Inadmissible Alien (Form I-831), and a 2026 Warrant of Removal (I-205). (See Docs. 6, 6-1, 6-2, 6-3, 6-4, 6-5, 6-6, 6-7.) Petitioner filed his reply on July 23, 2026. (Doc. 7.)

## III. DISCUSSION

### A. Jurisdiction

A writ of habeas corpus may be granted to a petitioner who demonstrates he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (holding that the Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States"). District courts have jurisdiction to hear habeas challenges to immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

It is well established that certain constitutional protections available to persons inside the United States are unavailable to noncitizens outside of our geographic borders. But once a noncitizen enters the country, the legal situation changes, "for the Due Process Clause applies to all persons within the United States, including [noncitizens], whether their presence is lawful, unlawful, temporary, or permanent." Id. at 693. Petitioner bears the burden to prove detention contrary to law by a preponderance of the evidence. See Belsai D.S. v. Bondi, 810 F. Supp. 3d 1016, 1020 (D. Minn. 2025) (citations omitted).

**B. Chhoeun v. Quinonez Settlement Agreement**

As stated, on April 27, 2026, the Central District of California approved the parties' Settlement Agreement. See Chhoeun, No. 8:17-CV-1898, Doc. 404. The Settlement Agreement intended to replace the prior permanent injunction – that required 14 days' notice prior to re-detaining a Cambodian citizen released on an Order of Supervision – with a single, one-time notice to all class members. (See Doc. 1-2.) The Settlement Agreement required that such notice was to be disseminated within six months, i.e., by October 27, 2026. (Id. at 7.)

Petitioner alleges that he received neither the informational notice required by the Settlement Agreement, nor a 14-day notice that ICE had revoked his Order of Supervision. (Doc. 1 ¶¶ 58–59.) Respondents appear to take the position that the Settlement Agreement immediately replaced the permanent injunction, striking down the 14-day notice requirement entirely. (Doc. 5 at 13, n.1) Respondents then contend that Petitioner's arguments are premature because there is still "plenty of time" for Respondents to provide the informational notice to Petitioner prior to the October 27, 2026 deadline. (Id. at 12.)

The Court finds that Respondents' position poses a "contorted interpretation of the Settlement Agreement." See Kean P. v. Blanche, et al., Case No. 26-cv-2951 (JMD/ECW) (D. Minn. June 18, 2026). Under Respondents' view, the Settlement Agreement eliminated the notice protection afforded to individual class members (like Petitioner) on April 27, 2026, while permitting Respondents to wait until October 27, 2026 to provide the notice intended to replace that protection. This would leave a six-month gap during which class members were entitled to neither the protections of the permanent injunction, nor the informational notice contemplated by the Settlement Agreement. Not only does this interpretation make little sense in practice, but it cannot be squared with the express language in the Settlement Agreement that prevents such interpretation.

The Settlement Agreement specifically addressed this transition period. It provided that "Respondents will continue to serve notices under the terms of the permanent injunction [requiring 14 days' notice to individual Cambodian citizens] until all Group 1 Notices are served under this section." (Doc. 1-2 at 8:15–17 (emphasis added).) This requirement was repeated in the court's Order approving the Settlement Agreement. Chhoeun, No. 8:17-CV-1898, Doc. 404 at 6. Thus, the Agreement clearly did not leave a gap between the 14-day individual

notice requirement and the class-wide informational notice requirement – it preserved the 14-day notice requirement unless and until class members, like Petitioner, received his generalized informational notice.

In the alternative, Respondents also maintain that Petitioner did receive the required informational notice in compliance with the Settlement Agreement. Respondents point to Petitioner's habeas petition and assert that Petitioner "obviously" received his informational notice "***because he filed it as an exhibit to his petition***." (Doc. 5 at 13 (emphasis in original).) Respondents also note that Petitioner apparently received a copy of the informational notice on July 17, 2026. (Doc. 5 at 13.)

Neither argument persuades the Court. The document Respondents reference as attached to Petitioner's habeas petition was the Settlement Agreement itself. (See Doc. 1-2.) The Settlement Agreement happens to include, as an exhibit, an example of a permissible informational notice (see Doc. 1-2 at 29 (titled "Exhibit A, Group 1 Notice").) An example of a notice contained in the Settlement Agreement is hardly notice itself, and Petitioner's possession of the Agreement does not extinguish Respondents' obligation to provide the notice required by that Agreement.

Further, the Settlement Agreement includes clear guidance on what kind of notice is sufficient under its terms. The Agreement requires Respondents to provide notice to class members either 1) "personally when the Class Member reports as required under an order of supervision," or 2) by mail. (Doc. 1-2 at 7.) Respondents cannot merely satisfy this requirement by pointing to a copy of the Settlement Agreement that Petitioner happened to possess. Moreover, even assuming that Petitioner received sufficient informational notice on July 17, 2026, that would be 10 days after he was already detained, not "when he report[ed]" to ICE for his check-in on July 7, 2026.

Because Petitioner did not receive the informational notice required by the Settlement Agreement, the Court is left with the notice requirement that remained in effect during the transition period. The permanent injunction notes that Respondents must provide 14 days' notice before re-detaining a Cambodian citizen released on an Order of Supervision. See Chhoeun, No. 8:17-CV-1898, Doc. 336. There is no dispute that Petitioner did not receive a 14-day notice prior to his re-detention. Petitioner alleges that he first learned that his Order of Supervision had been revoked when he appeared for his July 7 appointment, a date that is confirmed by the "Notice of Revocation" provided by Respondents.

(See Doc. 6-5.) Thus, by all accounts, Petitioner did not receive 14 days' notice of his re-detention.

**C. Remedy**

Because Petitioner did not receive either the generalized notice contemplated by the Settlement Agreement or individual notice 14 days in advance, Petitioner's detention violates the Chhoeun Settlement Agreement. Detention without a valid basis means that release is the appropriate remedy. See e.g., Ahmed M. v. Bondi, No. 25-cv-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026) ("Where the record shows Respondents have not identified a valid statutory basis for detention in the first place, the remedy is not to supply one through further proceedings.") (quoting Vedat C. v. Bondi, No. 25-cv-4642 (JWB/DTS) (D. Minn. Dec. 19, 2025) (Doc. 9 at 6)).

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. The Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus **[Doc. 1]** as follows:

    a. Respondents are ordered to arrange for the immediate release of Petitioner into Minnesota at a safe time and in a safe place that is communicated at least two (2) hours in advance to Petitioner's counsel;

b. Respondents are ordered to immediately return all Petitioner's personal items taken from him when he was detained in substantially the same condition as when the items were taken during his arrest, such as his driver's license, immigration papers, passport, cell phone, and keys;

c. Respondents are enjoined from imposing any conditions on Petitioner's release other than the conditions in his preexisting Order of Supervision; and

2. Respondents are ordered to confirm Petitioner's release from custody as well as the Respondents' compliance with the rest of the Court's Order within forty-eight (48) hours from the date of this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 28, 2026

s/Michael J. Davis
Michael J. Davis
United States District Court